# Commonwealth *v.* Railway Company.

*Pleading—Criminal law—Autrefois acquit.*

One test to ascertain whether a plea of autrefois acquit be a good bar, is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first. Whether a former acquittal was for the same offense depends on the record pleaded and not on the argument or inference deduced therefrom. If that record shows that the evidence necessary to support a conviction on the present indictment would have been insufficient to procure a legal conviction on the former, the plea of autrefois acquit is not sustained.

*Railroads—Obstruction of highway—Former acquittal.*

Evidence sufficient to convict a railroad company of the distinct offense of neglecting to provide a new road in lieu of a road lawfully taken would be insufficient to convict it of the offense of unlawfully entering upon and obstructing a highway. They are two distinct offenses; the former is not merely the constituent element of the latter.

*Railroads—Duty to reconstruct highway—Liability of successor to indictment for neglect.*

Where a railroad company has succeeded by purchase to the franchises, etc., of another company which originally occupied a highway, it becomes subject to the duties and liabilities relating thereto which rested upon the original company, and amongst them the duty to reconstruct the highway injuriously occupied by it.

The Allegheny Valley Railway Company was incorporated under the Act of April 4, 1837, P. L. 345, as the Pittsburg, Kittanning & Warren Railroad Company. It was not until the Act of May 8, 1854, P. L. 648,

that it was authorized to change the site of any turnpike, etc., upon assuming the burden of reconstructing such road longitudinally occupied. It follows therefore that any duty arising under the act of 1854, falls upon its successor, the Allegheny Valley Railway Company, which is liable to indictment for neglect of such duty.

*Railroad's duty of reconstructing public road—Statute of limitations.*

The statutory duty of a railroad company to reconstruct a road taken by it is a continuing duty, and if not performed by it it devolves upon a railroad company which succeeds by purchase to its franchises and privileges, and mere lapse of time will not absolve it from this duty nor bar the commonwealth.

*Railroad—Failure to reconstruct highway—Measure of sentence—Specific performance.*

Under conviction of a railroad company for failure to reconstruct or provide a public highway in lieu of one taken, the sentence can go no further than to punish the offense committed; that offense is the neglect to construct the road within a reasonable time. Performance of that duty cannot be specifically enforced by sentence on this conviction.

Argued Nov. 20, 1899. Appeal, No. 150, April T., 1899, by defendant, in suit of Commonwealth of Pennsylvania against Allegheny Valley Railway Company, from sentence of Q. S. Allegheny Co., Dec. Sess., 1898, No. 388, on verdict of guilty. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Modified and affirmed. Opinion by RICE, P. J.

Indictment for maintaining a public nuisance. Before COL-LIER and EVANS, JJ.

It appears from the record that the offense charged is substantially that the Allegheny Valley Railway Company, the defendant, from the 1st day of July, 1898, to the time of the inquisition, maintained a public nuisance within the county of Allegheny. That at the time of the original construction of what is known as the Allegheny Valley Railway in the year 1852, the Pittsburg, Kittanning & Warren Railroad Company had entered upon and appropriated for the construction of its railway, a portion of what was known as the state road, and had failed to construct a new road to take the place thereof.

In alternative counts it was charged that the railroad had crossed said portion of the state road at various points without

constructing causeways. The specific charge against the Allegheny Railway Company, the defendant, the present owner of said railroad, is that it has from the 1st day of July, 1898, to the time of the inquisition, operated said railway and occupied said portions of said state road without reconstructing a new road to take the place thereof, and without building causeways at the points of crossing thereof.

The first count contained a general charge of the occupation of the state road for the distance of two and nine tenths miles by the defendant with its line of railway. The even counts, from the second to the twenty-second inclusive, charged an appropriation of various specific portions of this distance of two and nine tenths miles by the Pittsburg, Kittanning & Warren Railroad Company in 1852, and its failure to change the site of said road or reconstruct a new road to take its place, and that the defendant, from July 1, 1898, to the time of the inquisition, continued to maintain said railroad on said road without having reconstructed said highway.

The odd counts, from the third to the twenty-third inclusive, charged the defendant with having maintained its railway across the state road at these same points without maintaining causeways thereover. The twenty-fourth count charges the defendant with obstructing a specific portion of the road, 2,000 feet in length, with its railway.

The jury found the defendant guilty on the second, fourth and sixth counts of the indictment, which charged it with occupying longitudinally three specific portions of the state road without constructing a new road to take the place of the portions occupied, and not guilty on all the other counts of the indictment. The court suspended sentence on the second and fourth counts, but sentenced the defendant on the sixth count of the indictment to pay a fine of $5.00 and abate the nuisance, and from that judgment this appeal is taken.

When the case was called for trial, the defendant moved to quash the indictment, which motion was overruled. It then filed a formal plea of autrefois aquit and the court was asked to dispose of that plea before going further with the case. This suggestion was overruled, the court stating that it was the practice in Allegheny county to try such a plea with the plea of "not guilty," and a plea of not guilty was then entered. When the

evidence was closed, before going to the jury, defendant moved the court to enter a judgment on the plea of prior acquittal, before the case was submitted to the jury on the plea of not guilty, which motion was overruled.

The plea of prior acquittal was based upon the record of the court of quarter sessions, of Allegheny county, at No. 806, September sessions, 1897, from which it appeared that on December 6 and 7, 1897, the defendant was tried on an indictment for a nuisance for obstructing the same road, between the same points, and that the jury had rendered a verdict of not guilty, and the question of the effect of that verdict upon the present case is raised, both in the formal plea of prior acquittal, and by the evidence in this case, and the prayers of the defendant which were refused by the court, that that record and judgment was conclusive evidence as between the commonwealth and the defendant that the defendant's acts did not constitute a nuisance.

Verdict of guilty and sentence thereon to pay a fine of $5.00 and costs on the sixth count and abate the nuisance. Eo die, sentence suspended on the second and fourth counts of the indictment. Defendant appealed.

It appears that four questions were raised by the ten assignments of error, which questions might be summarized as follows:

1. That the judgment at No. 806, September sessions, 1897, was as a plea a bar, or as evidence conclusive, that the taking of the road by the Pittsburg, Kittanning & Warren Railroad Company in the year 1853, and the maintenance of a railroad thereon by the defendant, was lawful, and is not a nuisance.

2. That under the charter and franchises of the Pittsburg, Kittanning & Warren Railroad Company, and the laws of the state of Pennsylvania in the year 1853, at the time of the taking of this road, that company had the lawful power and authority to take the road, and was under no duty to construct another highway to take the place of or supply the portions of the road so taken; that the defendant had succeeded to all the powers and franchises of that company, and that its acts were lawful, and did not constitute an indictable offense.

3. That the sentence imposed by the court is erroneous in that it not only imposed a fine upon the defendant, but ordered it to abate the nuisance; whereas, under the law of the commonwealth, the only sentence that could be imposed by the court

on the sixth count of the indictment was a pecuniary fine, and that so much of the sentence as ordered the defendant to abate the nuisance, is illegal and should be stricken off.

4. That the two year statute of limitations is a bar to the prosecution in this case, or at all events, that the great lapse of time, forty-four years, in which the occupation of this road had been acquiesced in by the commonwealth, is such a case of gross laches upon the part of the commonwealth as to bar any conviction.

*George B. Gordon*, with him *William Scott*, for appellant.— It is respectfully submitted that this matter is res adjudicata and that the verdict and judgment of the court of quarter sessions at No. 806, September sessions, 1897, was as a plea a bar, and as evidence conclusive that the defendant was not guilty of the offense charged in the indictment.

The principle of res adjudicata applies to the commonwealth (the state, the United States, the king), in a suit with an individual, whether in the criminal or in the civil courts: The Duchess of Kingston's Case, 20 Howell's State Trials, 355 (1776); Wells on Res Adjudicata, sec. 4, p. 5; Coffey v. United States, 116 U. S. 436.

There is no authority for the proposition that there is any difference between nuisance cases and any others as to the establishment of the fact that the structure complained of is or is not a nuisance: Hartman v. Incline Plane Co., 2 Pa. Superior Ct. 123; Amrhein v. Dye Works, 192 Pa. 253; Kilheffer v. Herr, 17 S. & R. 319.

The former recovery for the same nuisance conclusively establishes a right of recovery in a second or any subsequent action: Smith v. Elliot, 9 Pa. 345, and Plate v. New York Central R. R. Co., 37 N. Y. 471.

The only exception to this rule is in cases where the structure itself is not claimed to be a nuisance, but it is the use that is made of it which constitutes the offense.

The Allegheny Valley Railroad Company in the year 1852, at the time of the alleged taking of this road, had the right to take the same under its power of eminent domain, and there was no duty imposed upon it to reconstruct a new road to take the place thereof; therefore, neither it nor its successor, the

Allegheny Valley Railway Company was guilty of any indictable offense in failing to construct a new road : Act of April 4, 1837, P. L. 345 ; Supplement to the charter of Allegheny Valley Railroad approved April 15, 1851 (1852), P. L. 720.

Two years after the alleged taking of this road by the Allegheny Valley Railroad Company, the legislature passed the Act of May 8, 1852, P. L. 648, by which they imposed upon that railroad company the same duty as is imposed upon companies incorporated under the general railroad act by the 13th section.

Of course the act of 1854 could have no retroactive effect, and the only question that we have to determine is whether before the passage of that act the Allegheny Valley Railroad was under any duty to construct a new road to take the place of a highway taken by it. The decisions are perfectly plain to the effect that it was not. Under the law as it was then understood and uniformly laid down by the courts, the state could give a railroad company the right to occupy any public highway with its railroad, and the railway had the implied right to occupy every public highway between its termini, upon which its board of directors, in the exercise of their discretion, located the railroad : The Philadelphia & Trenton Railroad Company Case, 6 Wharton, 25 ; Mifflin v. Railroad Co., 16 Pa. 182 ; Com. v. Railroad Co., 27 Pa. 339 ; Railroad Co. v. Speer, 56 Pa. 325.

The statute of limitations is a bar to this case, or, at all events, the commonwealth has been guilty of such laches as to bar any conviction.

Of course there is no contention upon the part of the defendant in this case that time runs against the commonwealth in the ordinary acceptation of the term. Neither is there any pretense of a claim that any person can obtain, by the lapse of time or by prescription, a right to maintain a nuisance upon a public highway.

What we do contend for is that where there is no such question, the commonwealth may lose its rights by laches, and that most certainly it may ex gratia tie its own hands by statutes of limitation.

As Justice MERCUR said in Danville, etc., R. R. Co. v. Commonwealth, 73 Pa. 29, 38 : " A structure authorized by the legislature cannot be a public nuisance. A public nuisance

must be occasioned by acts done in violation of law. A work which is authorized by law cannot be a nuisance."

And so our Supreme Court has uniformly held that a railroad can only be indicted for the failure to construct a new road; that the taking of the old road is lawful, though the new road is never built; that the building of the new road is not in any way a condition precedent to the lawful taking of the old road: D. H. & W. Ry. Co. v. Com., 73 Pa. 29; P. V. & C. Ry. Co. v. Com., 101 Pa. 192; Com. v. R. R. Co., 117 Pa. 637; R. R. Co. v. Com., 90 Pa. 300.

Going a step further, however, it is perfectly clear that laches may be imputed to the commonwealth from the lapse of time.

The question is expressly ruled in the case of Com. v. Turnpike Co., 153 Pa. 47.

This principle is now thoroughly established in Pennsylvania: Com. v. Hulings, 129 Pa. 317; Com. v. Bridge Co., 176 Pa. 394; Wenger v. Rohrer, 3 Pa. Superior Ct. 599; and Com. v. Miltenberger, 7 Watts, 450.

The sentence in this case is illegal in that it imposes upon the defendant not only a fine but also orders it to abate the nuisance. This is squarely ruled in P. V. & C. Ry. Co. v. Com., 101 Pa. 192.

*Johns McCleave*, with him *Jas. Fitzsimmons* and *A. H. Rowand, Jr.*, for appellee.—At the trial of the case, the defendant interposed the plea of autrefois acquit, and it is upon the court's ruling, upon this plea, that they chiefly rely for the reversal of the judgment below.

It seems to us perfectly clear that this indictment first, was an indictment of the Allegheny Valley Railroad Company, and not at all of the Allegheny Valley Railway Company. The name, Allegheny Valley Railway Company, occurring in the several counts, is obviously mentioned merely as an alias, or another designation of the Allegheny Valley Railroad Company. Second, it was an indictment of the Allegheny Valley Railroad Company for the obstruction and continuing to obstruct the public road continuously from the mouth of Negley run to the mouth of Plum creek; that is, it was an indictment for the total appropriation of the road throughout the entire distance between Pittsburg and Verona. Third, it is an indictment of

the Allegheny Valley Railroad Company for obstructing and continuing to obstruct the said public road throughout the entire distance from the year 1855 down to the date of finding the indictment in September, 1897. Fourth, there was no indictment of the Allegheny Valley Railroad Company or of any one else, for failing to construct a new road in place of the road so taken and occupied.

There was a verdict of not guilty, and it is this verdict of not guilty upon this indictment, that the learned counsel gravely contends forever and for all time acquits the Allegheny Valley Railway Company from any further indictment as to its failure to reconstruct the public road, so destroyed, upon as favorable a location as the original road.

The defendant is convicted and sentenced only upon the sixth count of the indictment, and, upon this appeal, therefore, it is only necessary to consider the sufficiency of their plea of autrefois acquit, as to this count.

The test of whether or not the plea of autrefois acquit is good is thus laid down by the Supreme Court in the case of Com. v. Trimmer, 84 Pa. 65: " Whether the former acquittal was for the same offense depends on the record pleaded, and not on the argument or inference deduced therefrom. The defendants plead in bar a former trial on no other indictment than the one set forth in the plea. If that record shows that the evidence necessary to support a conviction on the present indictment, would have been insufficient to procure a legal conviction on the former, the plea of autrefois acquit is not sustained." This test is also repeated in the case of Hilands v. Com., 114 Pa. 372.

Apply this test to the present case. In this case in order to procure a legal conviction the commonwealth had to prove:

1. That there did, of right, exist a public road, at the eleven particular places specified and defined in several counts of the indictment.

2. That the Allegheny Valley Railway Company is a corporation created under the laws of the commonwealth.

3. That the Allegheny Valley Railway Company did, from July 1, 1898, until the finding of the indictment, maintain a railroad upon the said public highway, at the eleven particular places specified and defined, and that, at such places, obstructed the travel on and along said highway.

4. That the Allegheny Valley Railway Company, so maintaining the said railroad, had not reconstructed the public road at the places specified, upon as favorable a location as the portions of the road so appropriated.

Proof of these facts clearly would have been insufficient to procure a legal conviction on the former indictment for the following reasons:

1. By the former indictment, it is the corporation whose creation is therein shown and named, the Allegheny Valley Railroad Company, "otherwise known as the Allegheny Valley Railway Company," but, whatever the name, it is the corporation created by the act of April 4, 1837, that is charged, and not the corporation created in 1892, under the provisions of the act of May 31, 1887, by the purchasers, at the foreclosure sale of the property and franchises of the former corporation.

2. No conviction could have been had upon the former indictment by showing the occupation of the public road only at certain particular specified places, the charge in the former indictment being, that the defendant had taken and occupied the public road between Pittsburg and Plum creek.

3. Under the former indictment, the maintenance of the nuisance charged could not possibly have been shown to be between the first day of July, and September, 1898, as the former indictment was found in September, 1897, and charged the maintenance of the nuisance from 1855 to September, 1897.

4. The former indictment charges the occupation of the road as without authority of law. The offense charged in the present indictment is the occupation of the road, at the places specified, without reconstructing the road at said places, upon as favorable a location as the old road.

The gist of the offense in the present indictment is not the occupation of the road, at the places specified, but the failure to perform the charter duty of reconstructing, upon as favorable location as the old road. We do not know how we could have two cases, where it more clearly appears, "that the evidence necessary to support a conviction on the present indictment would have been insufficient to procure a legal conviction on the former."

Upon the present indictment the evidence must show:

1. A lawful occupation of the road under the company's charter.

2. A consequent duty to construct a new road.

3. A failure to perform this duty.

The only justification the defendant can show for the occupation of this highway is the supplement of 1854. It shows, at the same time, its duty to give the people a new road. The failure to discharge this duty is an indictable offense, and it is for this offense that the defendant in the present case has been indicated: P. V. & C. R. R. v. Commonwealth, 101 Pa. 192.

The appellant admits that time does not run against the commonwealth, and that no person can obtain, by lapse of time, or by prescription, a right to maintain a nuisance upon a public highway, but contends that the commonwealth has been guilty of such laches in calling upon the defendant to perform its charter duty to reconstruct the road appropriated, upon as favorable a location as the old road, that it is now estopped to take any proceeding to compel the defendant to perform this plain corporate duty. The appellant argues that because the Allegheny Valley Railroad Company was so fortunate as to escape the performance of the duty expressly imposed upon it, that, therefore, it, the Allegheny Valley Railway Company, can take and hold the franchises and property of the Allegheny Valley Railroad Company, clear and discharged of any liability to the commonwealth to perform the express obligations of the charter. We have seen that the Supreme Court of this state has expressly decided to the contrary: Commonwealth v. Railroad Co., 138 Pa. 58:

The statute of limitation runs not against the commonwealth; twenty-four years of continued nuisance created no presumption of a grant therefrom to maintain the same: Railroad Co. v. Com., 90 Pa. 300.

OPINION by RICE, P. J., July 26, 1900:

1. One test to ascertain whether a plea of autrefois acquit be a good bar, is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first: Heikes v. Commonwealth, 26 Pa. 513. Whether a former acquittal was for the same offense depends on the record pleaded, and not on the argument or inference deduced therefrom. If that record shows that the evidence necessary to support a conviction on the present in-

dictment would have been insufficient to procure a legal conviction on the former, the plea of autrefois acquit is not sustained: Commonwealth v. Trimmer, 84 Pa. 65; Hilands v. Commonwealth, 114 Pa. 372; Tadrick's Appeal, 1 Pa. Superior Ct. 555; Commonwealth v. Rockafellow, 3 Pa. Superior Ct. 588. This is the appropriate test to be applied in the present case. The question is, whether an acquittal on an indictment charging a railroad company with unlawfully and injuriously entering upon a highway, and constructing and maintaining its railway thereon, so as to utterly obstruct, prevent and impede the free use and passage thereof, is a bar to a prosecution for a failure to construct a new road to take the place of a road lawfully taken and occupied by the railroad company? We are speaking of the occupation of a highway longitudinally.

The foregoing is, we think, a fair statement of the question raised by the first two assignments of error. For, whilst the first count of the former indictment charges that the Allegheny Valley " Railroad " Company was in duty bound to reconstruct any portion of any public road that it might be necessary to take in the construction of its railroad, it did not charge a neglect of that duty. The gravamen of the charge was that it " unlawfully and injuriously did enter upon the said public road or state road at different points, . . . . and did then and there take thirty-three (33) feet in width and four and two tenths miles in length and did then and there unlawfully and injuriously construct and place thereon clay, stone and other materials, and cause embankments, fills . . . . and culverts to be made, and did then and there unlawfully and injuriously place thereon certain rails, ties, tracks, sidings, and did then and there unlawfully and injuriously construct thereon depots, station houses so as to utterly obstruct, prevent and impede the free use and passage," etc.; also that it unlawfully and injuriously permitted these obstructions to remain in the highway down to the time of the finding of the bill. This was an indictment for a common-law nuisance, not an indictment for neglect of its duty to reconstruct the road taken. If we are correct in this conclusion, the answer to the question above stated is plain.

Where an act gave a railroad company power to construct

its railroad on a public road and provided that if in its construction it should be necessary " to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense, on the most favorable location and in as perfect a manner as the original road," it was held, first, that this did not require that the making of the new road shall precede the occupying of the old road ; second, that the mere occupancy longitudinally of a public road by a railroad company having such authority and the consequent obstruction of public travel do not constitute a nuisance, and if no more be charged in the indictment there can be no conviction, even though it be proved on the trial that the company had neglected to provide a new road in lieu of the one taken : Danville, etc., R. R. Co. v. Commonwealth, 73 Pa. 29. The question whether or not the railroad company could have been convicted for its failure to reconstruct the road on proper ground and in a suitable manner did not arise in that case, because that was not the offense charged. It was therefore reserved for future consideration. It was distinctly raised in the later case of Pittsburg, etc., Ry. Co. v. Commonwealth, 101 Pa. 192, and was decided in the affirmative. It is unnecessary to cite other cases. We regard it as well settled that evidence that would be sufficient to convict a railroad company of the distinct offense of neglecting to provide a new road in lieu of a road lawfully taken would be insufficient to convict it of the offense of unlawfully entering upon and obstructing a highway. They are two distinct offenses ; the former is not merely a constituent element of the latter. The principle, that an acquittal of an offense is a bar to a subsequent conviction of an offense which was a constituent element of the former, and of which a conviction might have been had on the former indictment, does not apply. For these reasons, the first two assignments of error are overruled.

2. The defendant's second proposition is thus stated by counsel : The Allegheny Valley " Railroad " Company in the year 1852, the time of the alleged taking of this road, had the right to take the same under its power of eminent domain, and there was no duty imposed upon it to reconstruct a new road to take the place thereof ; therefore, neither it nor its successor, the Allegheny Valley " Railway " Company was guilty of an indict-

able offense in failing to construct a new road. In discussing this proposition it will be well to consider, first, the rights and duties of the Allegheny Valley "Railroad" Company, second, the duty of the Allegheny Valley "Railway" Company, its successor, this defendant.

The former company was incorporated under the name of the Pittsburg, Kittanning and Warren Railroad Company by the Act of April 4, 1837, P. L. 345.

. Section 6 provided, that "when the route of said railroad, or any of its branches shall be determined upon by the said company, it shall be lawful for said company, their agents, officers, engineers, contractors and servants at any time to enter upon, take possession of and use any such lands, buildings and enclosures as may be necessary for carrying into effect the purposes of this act."

Section 8 provided: "The said railroad shall be so constructed by the said company, as not to impede the free use and passage of any public or private roads which they may find expedient to intersect but it shall be the duty of said company to cause to be made sufficient causeways over any such roads, so intersected, as soon as expedient, so as to enable all persons and vehicles to pass over the railroad with safety and convenience, and to maintain such causeways in good repair," etc.

A supplement approved May 8, 1854, P. L. 648 provided, "that if the Allegheny Valley Railroad Company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith, at their proper expense, on the most favorable location, and in as perfect a manner as the original road."

This is all the legislation bearing directly upon the question under consideration that need be noticed. The defendant's counsel contend that the act of 1854 could not have the retroactive effect to impose a duty upon the company to reconstruct a road lawfully taken by it prior to that time. For the purposes of this discussion only, this may be conceded. But then the question arises, did the act of 1837 give it power to occupy a public road longitudinally? That the legislature may authorize a railroad company to lay its tracks on a public street is not questioned, but all the authorities agree that if this power is not given in express words or by necessary implication, it

does not exist. It was not given in the act of 1837 in express
words. It was given by implication so far as the intersection
of roads was concerned, and the commonwealth's counsel insist
that it was limited to such occupancy. They are supported in
this contention by the decision of the Supreme Court in Penn-
sylvania R. Co.'s Appeal, 115 Pa. 514. There one of the
questions considered was whether the defendant company had
the right to lay its tracks on the streets of a borough under the
provisions of the charter of the Portsmouth, etc., R. R. Co.
The provisions referred to did not differ in any essential partic-
ular from those of the act of 1837. Mr. Justice TRUNKEY, de-
livering the opinion of the court, said: "The course of legisla-
tion in Pennsylvania, relative to railroads, shows continuous
care to protect the public roads from the grasp of railroad com-
panies, except upon terms that they render an equivalent to
the public. A fair example is the legislation upon this point
for the Pennsylvania Railroad Company. At first, the Act of
April 13, 1846, P. L. 312, provided that when necessary to cross or
intersect any established road or way, said company should so
construct their road as not to impede the passage or transportation
of persons or property along said established road or way. This
being the only provision in the act of incorporation relative to
public roads, in face thereof, it would have been exceedingly
difficult, in accordance with the rules of interpretation, to have
construed the general terms authorizing the taking of land,
to authorize the taking of an established road and laying the
track thereon longitudinally. Therefore, supplemental acts
were enacted, providing that when said company should find
it necessary to change the site of any turnpike or public road,
or any street, lane or alley, in any town, borough, or city, they
should reconstruct the same forthwith, on the most favorable
location, and in as perfect a manner as the original road. . . .
It has been said with reference to charters of incorporation, that,
'whatever is doubtful is decisively certain against the corpora-
tion.' There seems no occasion to apply that rule in this case.
Nothing in the statutes relating to the powers of the Harris-
burg, Portsmouth, Mount Joy and Lancaster Railroad Company,
shows an intendment that the company should have the right
to lay its tracks lengthwise on other public highways. Of
course, it would be necessary in the construction of the railroad

to intersect and cross other highways, and the charter compels the company to make and keep in repair good and sufficient passages at such crossings. This express provision left no room for doubt, as to any kind of occupancy of public roads not mentioned. What is not plainly expressed, or necessarily implied, is not granted." We have felt justified in making this extended quotation because it covers the whole ground and renders further discussion by us unnecessary. We agree, therefore, with the commonwealth's counsel, that the only justification the Allegheny Valley " Railroad " Company had for the occupation of this highway longitudinally was the supplement of 1854, and this showed its duty to provide a new road in lieu of the road, or portions thereof, taken. This was a continuing duty and devolved upon the defendant company, the successor of the Allegheny Valley " Railroad " Company : Act of May 31, 1887, P. L. 278. Where a railroad company has succeeded by purchase to the franchises, etc., of another company which originally occupied a highway, it becomes subject to the duties and liabilities relating thereto which rested upon the original company, and amongst them the duty to reconstruct the highway injuriously occupied by it : Commonwealth v. Railroad Co., 138 Pa. 58. See also Commonwealth v. Penna. R. Co., 117 Pa. 637.

3. The defendant's third proposition is that the statute of limitations is a bar to this prosecution, or at all events the commonwealth has been guilty of such laches as to bar a conviction.

To an indictment against a railroad company for obstructing a turnpike by the construction and maintenance of its railroad over the same the defendant pleaded specially, inter alia, that the railroad as there constructed had been in use for twenty-four years. In affirming the action of the quarter sessions in overruling the special plea, the Supreme Court, by MERCUR, J., said : " The statute of limitations runs not against the commonwealth. Twenty-four years of continued nuisance creates no presumption of a grant therefrom to maintain the same : " Northern Central Railway Co. v. Commonwealth, 90 Pa. 300.

A railroad company, whose charter provided that if it should be necessary to change the site of any road, it should cause the same to be reconstructed forthwith, occupied a portion of a

public highway with a wall and an embankment on which to support its own roadbed, and subsequently, before its railroad was completed and opened for travel, leased its franchises and privileges to another railroad company which completed and operated the same. Twenty-seven years after the original taking, and twenty-three years after the railroad was opened for travel an indictment was found for neglecting to construct a new road upon the most favorable location, as required by statute. It was argued, that even if the statute of limitations was not a bar, yet the acquiescence for over twenty-five years interposed a serious obstacle to a criminal prosecution. It was nevertheless held, reversing the court below, that an indictment and conviction of the lessee company could be sustained: Commonwealth v. Penna. R. Co., 117 Pa. 637.

A railroad company in the construction of its roadbed in 1865 so encroached upon a turnpike as to injure it materially. Thereupon the turnpike company abandoned the road, and from that time it was maintained by the township authorities. In 1887 proceedings by mandamus were instituted by them to compel the railroad company which had succeeded by purchase to the franchises, etc., of the original company to reconstruct the road. On the trial of the issue raised by the pleadings the court was requested to charge: " That although the statute of limitations will not run against the commonwealth, it will run against a municipal corporation; and as the plaintiffs' cause of action, if any, was complete on the construction of the road, which was more than twenty-one years before the commencement of this suit, the action is barred by the statute of limitations." This was answered in the negative, the court adding, the statute of limitations does not run against the public. The court also charged as follows: " There are some cases, where, after great lapse of time, and after improvements have been honestly made upon the faith of appearances, and when parties could not have learned the true situation, and possession thus taken has been acquiesced in for more than twenty-one years, an equitable estoppel would be allowed, but, in my opinion, this is not one of these cases. The defendants purchased the franchise at sheriff's sale, and they took it cum onere; that is, with its burdens and subject to all the duties and liabilities existing against the original road constructing the same." These in-

structions were held not to be erroneous: Commonwealth v. R. R. Co., 138 Pa. 58.

These cases are directly in point; they are plainly distinguishable from Commonwealth v. Bala, etc., Turnpike Co., 153 Pa. 47, and the class of cases 'to which it belongs, and seem to us to be conclusive against the defendant's position. Our conclusion is that the statutory duty of a railroad company to reconstruct a road taken by it is a continuing duty; that if not performed by it, it devolves upon the railroad company which succeeds by purchase to its franchises and privileges, and that mere lapse of time will not absolve it from this duty nor bar the commonwealth.

4. The offense of which the company is convicted is not for taking possession of the public highway in the construction of its railroad, but for the disregard of its duty to forthwith reconstruct, so as to provide a suitable highway in lieu of the one taken. It cannot, therefore, be compelled by sentence in this case, to either remove the obstruction from the old road or to construct a new one. The sentence can go no further than to punish for the offense committed. That offense is the neglect to construct within a reasonable time. The performance of that duty cannot be specifically enforced by sentence on this conviction; P. V. & C. Ry. Co. v. Commonwealth, 101 Pa. 192. Under this ruling that portion of the sentence requiring the defendant to abate the nuisance must be stricken out.

The sentence is modified and amended by striking therefrom all excepting the fine of $5.00 and the costs, and as thus amended and modified, the judgment is affirmed.