## Furniss *versus* Furniss.

No agreement between supervisors and owners of land through which a public road passes can give validity to a change of the route of such road differing from that reported by the viewers.

Where a road has been opened, but not of the legal width, nor upon the ground designated by the viewers, subsequent supervisors, in widening the road to its legal width, must be governed by the road as opened, and its breadth must be regulated from the centre of the beaten track as used.

The authority under the order to open a road is exhausted by the action of those to whom it is directed. Another supervisor has no power to relocate the road for the purpose of placing it upon what he supposes to be its recorded site.

| | |
|---|---|
| 29 | 15, |
| 199 | 597 |
| 29 | 15 |
| 208 | 79 |
| e208 | 2 80 |
| 29 | 15 |
| 27 SC | 3 441 |
| 29 | 15 |
| 215 | 1 152 |
| 215 | 154 |
| 29 | 15 |
| 33 SC | 1 518 |

ERROR to the Common Pleas of *Lancaster county.*

The facts of the case are fully stated in the opinion of Mr. Justice ARMSTRONG.

*Dickey* and *Alexander*, for plaintiffs in error.

*Eshelman* and *Hiester*, for defendant in error.

The opinion of the court was delivered by

ARMSTRONG, J.—The facts, necessary to a proper understanding of this case, may be stated in a very short manner. In 1845 a public road was laid out in Little Britain township, Lancaster county, called "Gatchell's Road." A part of this road was located upon the line separating the land of William Pennock, on the one side, from the land of Joseph Sidwell, on the other. In 1846 it was confirmed by the court, and an order issued to the supervisor to open it to the breadth of thirty-three feet. In pursuance of the order he opened it its full breadth, to a point on the line between Pennock and Sidwell, on which stood Pennock's post and rail fence, and here he deviated from the course, and opened a road where an old one had been, on the Sidwell side of the line, and from sixteen to twenty feet wide from Pennock's fence. In 1854 Thomas and Benjamin Furniss became the owners of the Sidwell tract, which at that time was not enclosed along the road. Soon after this, they erected a fence seventeen feet from Pennock's line, and on the road as is alleged. In the fall or winter of 1855 it became necessary to widen the road at this place, and the defendants, Jacob L. Kirk the supervisor, and others who worked under his direction, took down the fence and removed it; and for this the plaintiffs bring their action of trespass. If the fence was erected within the bounds of the road, it was the duty of the supervisor to remove it as a nuisance; and upon this depends the plaintiff's right of action. Where then was the road, and how was this fact to be determined? The defendants offered to prove by Charles E. Pennock, who was one of the heirs and administrators of William Pennock, deceased, that he and his co-administrators were present with the supervisor, William Gibson, when he came to open the road, and that instead of opening it on the line, the supervisor and they agreed that it should be opened on the land now owned by plaintiffs, and that it was so opened. This, which is the first error assigned, was objected to by plaintiffs. No agreement, between a supervisor and owners of land, could give validity to a change of route different from that reported by viewers. This evidence, however, was only allowed for the purpose of ascertaining where the road was, and, in this aspect, could not prejudice the plaintiffs' rights. Its location was a visible fact, abundantly proved by other witnesses.

The second and third errors assigned may be considered together, as they both embrace the same principle. Had this road been opened according to the report of the road viewers, then undoubtedly the whole breadth, to the extent of thirty-three feet, would be devoted to public use, and the supervisor would have a right to open it sixteen and a half feet on each side of the reported

[Furniss v. Furniss.]

line. But this would not be the case where the supervisor departed from the line, and opened the road on other ground, wherever that might be. Then the centre of such road would govern and limit the breadth dedicated to the public use. It is settled in McMurtrie v. Stewart, 9 *Harris* 322, that "where a road has been opened by supervisors, its location cannot afterwards be altered by another supervisor, for the purpose of placing it on what he may suppose to be its proper site;" and this is in accordance with practical experience. It is certainly the duty of supervisors, in executing an order for the opening of a road, to follow the report of viewers as nearly as possible. But we all know that in practice it is rarely carried out with fidelity. Marshy ground, an increased elevation, a deep ravine, and many other things, may induce a deviation; yet when once laid, there it must remain. The authority under the order to open is exhausted by the action of those to whom it is directed, and cannot be resumed. It can only be altered by a new proceeding under the road law: 9 *Harris* 322.

In the case before us, seven years after this road was opened, and upon ground that had been used as such from twenty to thirty years before, and worked by successive supervisors, the defendant, Kirk, in the discharge of his duty, was required to widen it at this particular place. How was this duty to be performed? In Holden v. Cole, 1 *Barr* 307, the court say, as was said in 9 *Harris* 322, "Supervisors have no authority to relocate a road in order to place it on *what might be supposed its recorded site.*" The only evidence the supervisor had before him was the road itself, and this he could not alter. He ascertained the middle of the beaten track, put up stakes along the line, and thus found the plaintiff's fence to be on the public highway, and he had a right to remove it.

Where a public road has been opened, and worked on ground different from that marked out and reported by viewers (I speak not of roads through unimproved lands where the original marks are plainly visible), it will be a safe rule to extend its breadth, when necessary, from the middle of the road so worked and used, to the limit allowed by law. The instructions of the court being in accordance with this, the judgment must be affirmed.

Judgment affirmed.