Commonwealth *v.* Delaware, Lackawanna & Western Railroad Company, Appellant.

215
36 SC   149'
545

*Railroads—Taking of public road—Reconstruction of road—Act of February 19, 1849, sec. 13, P. L. 79.*

Where a public road is laid out by formal proceedings in the quarter sessions, with a legal width of thirty-three and a half feet, but the part actually opened and traveled is of much less width, a railroad company in changing the site of the road, and reconstructing it, is bound to reconstruct it as of the original width, and if it fails to do so and erects buildings of its own within the legal width of the road such buildings constitute a nuisance, and will be enjoined.

Argued March 6, 1906.   Appeal, No. 43 Jan. T., 1906, by defendant, from decree of C. P. Monroe Co., Dec. T., 1905, No. 3, on bill in equity in case of Commonwealth ex rel. Hampton L. Carson, Attorney General, v. Delaware, Lackawanna &

Western Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Affirmed.

Bill in equity for an injunction.

Before STAPLES, P. J.

The court after finding the facts found the following conclusions of law:

1. It was the duty of the defendant railroad company upon appropriating and occupying the original road through the Delaware Water Gap and changing the site thereof, to reconstruct the same in as favorable a location and in as perfect a manner as the original road, and, inter alia, to locate and establish it of the width of thirty-three and one-half feet.

2. The erection of the buildings of the stone crusher plant partially within the lines of said public road or street, and the overhead chute extending across the public road or street by the defendant company was illegal, and by the obstructions and operations within said street lines it is maintaining a nuisance which should be abated, and the plaintiff is entitled to a decree to that effect.

3. The blasting of the defendant company as carried on in the operation of its work has been dangerous and should be conducted in such a manner as to prevent the throwing or casting of stones or other material either into the public road or the Delaware river, both public highways.

*Error assigned* was decree awarding the injunction.

*W. S. Kirkpatrick* and *A. Mitchell Palmer*, for appellant.— The defendant maintains that this highway having been established by prescription, it is a public highway only to the extent of the public user and consequently where the width of the highway as used by the public is plainly indicated upon the ground, being bounded on the one side by a stone wall and on the other by the precipitous rocks of the mountain side, it became, and is, a public highway only between those bounds. The defendant in erecting its stone crusher plant kept well without those bounds: Wayne County Savings Bank v. Stockwell, 84 Mich. 586 (48 N. W. Repr. 174); Gentleman v. Soule, 32 Ill. 271; Kruger v. LeBlanc, 70 Mich. 76 (37

N. W. Repr. 880); McKay v. Doty, 63 Mich. 581 (30 N. W
Repr. 591); Wheeler v. Fitchburg, 150 Mass. 350 (23 N. E.
Repr. 207); Valentine v. Boston, 39 Mass. 75; State v.
Trask, 6 Vermont, 355; Plummer v. Ossipee, 59 N. H. 55;
Hinks v. Hinks, 46 Me. 423; Coleman v. R. R. Co. 64 Mich.
160 (31 N. W. Repr. 47); Scheimer v. Price, 65 Mich. 638
(32 N. W. Repr. 873); Western Ry. Co. v. Alabama Grand
Trunk Ry. Co., 17 L. R. A. 474; Reg. v. Telegraph Co.,
12 Eng. Ruling Cases, 562; Com. v. Llewellyn, 14 Pa. Superior
Ct. 214.

*Hampton L. Carson,* Attorney General, with him *Wilton
A. Erdman,* for appellee.—In the present case every act
essential to pass title to the defendant to that portion of
the road where the obstruction occurs has been complied with.
It meets in every particular the cases of McClinton v. Ry. Co.,
66 Pa. 404, and Phila., etc., R. R. Co. v. Cooper, 105 Pa., 239,
cited by appellant. It entered the land without appropriation,
constructed the road, and in 1857 made compensation to John
Barnes, the owner, and secured his release for all damages
and demands by reason of such entry and appropriation. It
seems ridiculous, therefore, to contend that the portion of the
road over the John Barnes tract exists by prescription when
the defendant has shown performance by it of everything
necessary to prove that the land was obtained in a lawful
manner and that the railroad company performed its duty.

That it is necessary for a railroad to reconstruct the road of
the same width as the original, has never been questioned
in this state. We have been able to find but four cases
in which the matter has been alluded to: Commonwealth
v. R. R. Co., 138 Pa. 58; Conshohocken Ry. Co. v. Penna.
R. R. Co., 15 Pa. C. C. Rep. 445; Com. v. R. R. Co., 24 Pa. 159;
Baldwin Twp. v. R. R. Co., 210 Pa. 86.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 7, 1906:

The learned judge below found the facts clearly and dis-
cussed and applied the law correctly, but owing to the wide
range of the argument before him, at greater length and in more
detail than is now necessary, as the essential facts are few and
not really in dispute.

In 1803, by proper proceedings in the quarter sessions of Northampton county which then included the locus of the present controversy, a public road was laid out through the gorge of the Delaware Water Gap. This road was opened and continued to be used by the public until some time between 1853 and 1855, when a portion of it was appropriated and occupied by the defendant railroad company, and replaced by the road now in dispute, substantially parallel but higher up the side of the mountain. In 1904, the railroad company having become the owner of a tract of land which included a part of the relocated public road, erected a stone crusher plant consisting of a quarry further up the side of the mountain, buildings on both sides of the road, and a covered chute across the road to connect the buildings. The present bill was filed to enjoin the operation of the crusher as an encoachment on the highway and a public nuisance.

These are the material facts and they are not really in dispute. Subordinate issues were raised as to the construction by the railroad under requirement of an Act of April 26, 1855, P. L. 302, of a guard wall to protect teams from running over the embankment; the effect of several indictments by the quarter sessions of Monroe county (formed in 1836, from Northampton and Pike), for failure to keep the road in repair; the agreement in 1868, between the railroad company and the supervisors of the township as to the repair and acceptance of the new road in place of the old, etc. None of these, however, are material to the present controversy. The act of 1855, was a requirement of a safety guard on the precipitous side of the road and had no bearing on the question of width; the indictments were all upon the condition and want of repair, and the agreement of the supervisors in 1868, had reference only to the same thing, that the new road was satisfactory as to condition and accepted as replacing the old in that respect. It did not profess to go any further, or to alter the rights of the township or the commonwealth as to the title or legal limits of the highway, and it could not have done so had it attempted to. The supervisors are subordinate agents and have no authority to give away the rights of the commonwealth: Furniss v. Furniss, 29 Pa. 15; Snow v. Deerfield Township, 78 Pa. 181.

The substantial question is upon the title of the common-

wealth to the new, or reconstructed road, with special reference
to its width. The court below found that the legal width of
the original road in 1803, was fixed at thirty-three and a half
feet; that there was no evidence as to the width at which it was
actually opened and used for travel, but the presumption was
that it followed the usual custom of country roads in that vicin-
ity and had an opened and traveled width of twelve to sixteen
or eighteen feet. The new or relocated road appears to have
been opened and used for travel at about the customary width,
but there was no evidence as to the fixing of any legal width,
or as to the amount of land taken for it, or the means by which
the railroad company acquired title to such land from the pre-
vious owners.

On this state of facts the appellant bases its contention that
the relocated or present road exists only by prescription and
therefore occupies only the ground covered by the opened and
traveled way. In substance this is the appellant's whole case.
Its buildings, except the chute, are outside of the traveled
way but within the thirty-three and a half feet claimed by the
commonwealth.

The argument rests on a fundamental misconception of the
law and the burden of proof. The original road of 1803, was
laid out by formal proceedings in the quarter sessions, with a
legal width of thirty-three and a half feet. It was actually
opened presumably only to the ordinary width, but it retained
its capacity to be opened to its full legal width at any time in
the future when the public convenience should require it.
This was its status, legal and actual, when the appellant took
possession. It is conceded that the only authority for such
taking was sec. 13 of the Act of February 19, 1849, P. L. 79,
which enacts that "If any such railroad company, shall find it
necessary to change the site of any portion of any turnpike or
public road, they shall cause the same to be reconstructed
forthwith at their own expense, upon the most favorable loca-
tion, and in as perfect a manner as the original road." What
the railroad company does under this authority is not to give
the commonwealth a new road with a new title and new attrib-
utes, but the old road reconstructed. The site is necessarily
changed but in all other respects it is to be " the same," to wit:
expressly upon the most favorable location and in as perfect a

manner as the original road, and by necessary implication of the same other qualities including width, actual and potential.

If when it took the former location of the highway and relocated the latter in 1855, the railroad only substituted a way of the traveled width, then when a half century or more later the public needs should require a wider highway the township would be compelled to resort to new proceedings and pay for additional land. That would not be reconstructing "the same" as the statute requires. The suggestion answers itself. In contemplation of law the present road is the road that was opened by legal proceedings in 1803. Its course has been deflected at this point but its entity remains the same, with all its attributes unchanged in point of law. If in the course of years the change had gradually come about to avoid obstacles, improve grade, or other reason of such kind, the legal as well as the actual road would in time be that which the public used, though it was not in the place where the viewers originally located it, and though the supervisors never had at any time the authority to relocate it: Furniss v. Furniss, 29 Pa. 15; Com. v. Marshall, 137 Pa. 170.

Part of appellant's argument that the present road exists only by prescription, is based on the absence of any evidence as to how the ground for it was acquired by the railroad company. But the burden of proof was on the appellant. Even in ordinary cases where a railroad takes land for a right of way the presumption is that it takes the full width of sixty feet authorized by statute: Jones v. Erie, etc., R. R. Co., 144 Pa. 629. And such presumption is not rebuttable where as in the present case the width of land, however acquired for the purpose, was not dependent on the judgment of the corporation but had to be adequate to the discharge of its statutory obligation to replace the public highway. It is not for the corporation to defend on the ground that it did not do its duty.

The buildings were within the legal limits of the highway, the chute extending across it though above the surface was of course an obstruction, and the court found that the quarry was so operated as to be dangerous to public travel and a nuisance. The injunction was therefore properly issued.

Decree affirmed with costs.